## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**GREGORY LINDSEY,**

     **Petitioner,**

**v.**                                                            **Civil Action No. 1:18cv41**
                                                                 **(Judge Kleeh)**

**JENNIFER SAAD, Warden,**

     **Respondent.**

## REPORT AND RECOMMENDATION

### I. Procedural Background

On February 12, 2018, the *pro se* Petitioner, Gregory Lindsey ("Lindsey"), an inmate incarcerated at FCI Gilmer in Glenville, West Virginia, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, seeking Good Time Credit ("GTC") against the minimum term to which he has been sentenced, in order to determine his eligibility for release on parole in accordance with the District of Columbia's Good Time Credits Act of 1986 ("D.C. GTCA"). ECF No. 1.

Along with his petition, Lindsey filed a motion to proceed as a pauper with a copy of his Prisoner Trust Account Report and its Ledger Sheets. ECF Nos. 2, 3. By Order entered February 14, 2018, Lindsey was granted permission to proceed as a pauper but directed to pay the $5.00 filing fee. ECF No. 5. On March 7, 2018, Lindsey paid the requisite fee. ECF No. 8.  On April 4, 2018, 2017, after a preliminary review determined that summary dismissal was not appropriate, the Respondent was ordered to show cause why the petition should not be granted. ECF No. 9.

On May 2, 2018, the Respondent filed a Motion to Dismiss or in the Alternative, Motion for Summary Judgment, with an attached memorandum in support. ECF No. 11. On May 3,

2018, because Petitioner was proceeding *pro se*, a <u>Roseboro</u> notice was issued. ECF No. 12.  On May 14, 2018, Petitioner moved for an extension of time. ECF No. 14.  By Order entered the next day, the extension was granted. ECF No. 15. On May 18, 2018, Petitioner moved for appointment of counsel and filed a second motion to proceed as a pauper.  ECF Nos. 16, 17.  By separate Orders entered May 30, 2018, Petitioner's second motion to proceed as a pauper was denied as moot and his motion for appointed counsel was denied.  ECF Nos. 19, 20.  On June 11, 2018, Petitioner filed a response in opposition to Respondent's dispositive motion.  ECF No. 22. On June 14, 2018, Respondent filed a reply.  ECF No. 23.  On June 22, 2018, Petitioner filed a motion for an enlargement of time. ECF No. 24.  By Order entered June 25, 2018, Petitioner's motion for an enlargement of time was construed as motion to file a surreply and denied. ECF No. 25.  Nonetheless, on July 9, 2018, Petitioner filed a Response to Respondent's Reply for its Motion to Dismiss, or in the Alternative, its Motion for Summary Judgment.  ECF No. 27.

By Miscellaneous Case Order entered on December 1, 2018, this case was reassigned from United States District Judge Irene M. Keeley to United States District Judge Thomas S. Kleeh. On December 10, 2018, Respondent filed a Motion for Permission to Replace Exhibits. ECF No. 29.  By Order entered December 10, 2018, the motion was granted. ECF No. 30.

## II. <u>The Pleadings</u>

### A. <u>The Petition</u>

Petitioner contends that his GTCs were not accurately computed, resulting in a sentence longer than what is constitutionally permissible, in violation of his Equal Protection and Due Process rights. ECF No. 1-1 at 1.  He requests that his GTCs be calculated in order to determine his eligibility for release on parole, in accordance with the D.C. GTCA. He attaches a copy of an Inmate Request to Staff [ECF No. 1-3], inquiring about the same; a copy of a Sentence

Monitoring Good Time Data as of January 31, 2018 [ECF No. 1-4]; and a copy of his Inmate Education Data Transcript. ECF No. 1-6.

**B. <u>Respondent's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment</u>**

Respondent argues that the petition should be dismissed or summary judgment granted in its favor.  ECF No. 11 at 1; ECF No. 11-1 at 5. As reason therefore, Respondent asserts that Petitioner's sentences amount to a life sentence, subject to parole, with a mandatory minimum term of twenty-five years, and that no GTCs are awarded against a sentence when the minimum term imposed is equal to the mandatory minimum term for that sentence, as is the case here. ECF No. 11-1 at 4.  Therefore, Petitioner is not entitled to earn GTC during the twenty-five year mandatory minimum portion of his sentence. <u>Id.</u> Respondent attaches a sworn declaration and exhibits to its motion. ECF Nos. 11-2, 11-3.

**C. <u>Petitioner's Response in Opposition</u>**

Petitioner reiterates his arguments and attempts to refute Respondent's on the same, asserting that his mandatory minimum sentence should be reduced, to advance his parole eligibility date. ECF No. 22 at 2. He argues that his murder charge "under which he was sentenced in 1992 [sic], is not specifically excepted from the provision for institutional Good Time Credits under the [Good Time Credits] Act [of 1986][.]" <u>Id.</u> at 4.  In support, he relies upon <u>Cunningham v. Williams</u>[1] and <u>Lorando v. Waldren</u>.[2] <u>Id.</u> at 4.

**D. <u>Respondent's Reply</u>**

Respondent's reply reiterates its position that Petitioner is not entitled to the relief he seeks. ECF No. 23 at 1. Respondent notes that Petitioner's reliance on <u>Lorando</u> is true to the

---

[1] <u>Cunningham v. Williams</u>, 711 F.Supp.  644 (D.D.C. 1989) *rev'd,* 954 F.2d 760, 293 U.S. App. D.C. 329, 1992 U.S. App. LEXIS 1059 (D.C. Cir. 1992).

[2] <u>Lorando v. Waldren</u>, 629 F.Supp 2d. 60 (D.D.C. 2009).

extent that <u>Lorando</u> explains the overarching purpose and application of GTCs; nonetheless, Petitioner is still prohibited from earning GTCs which would result in a sentence below his mandatory minimum sentence. <u>Id.</u> at 3. Moreover, Respondent points out that <u>Cunningham</u> is no longer good law, having been reversed by <u>Poole v. Kelly</u>, 954 F.2d 760 (D.C. Cir. 1992) (noting that subsequent to the district court's decision in Cunningham, the D.C. City Council passed legislation specifically excluding persons sentenced under the first-degree murder statute from the GTCA). <u>Id.</u>

### E. <u>Petitioner's Surreply</u>

Plaintiff filed an additional response, or surreply, to Defendants' reply. However, as Petitioner has already been advised, under the local rules of this District, a surreply memoranda may not be filed [<u>see</u> ECF No. 25] and will not be considered by the undersigned. <u>See</u> LR PL 11(d).

### III. <u>Petitioner's Conviction and Sentence</u>

In the early morning hours of February 23, 1992, in the 600 block of Morton Street N.W. in Washington D.C., an individual by the name of Russell Johnson was shot twenty-three times and died from those wounds.  Several eyewitnesses identified Petitioner and a co-defendant as the shooters. <u>Lindsey v. United States</u>, 911 A.2d 824, 827 (Nov. 30, 2006, D.C. App.).  Lindsey was first arrested in 1992 in connection with the murder; he was informed of his Miranda rights and signed a PD-47 form indicating that he was not willing to talk to police without an attorney present. <u>Id.</u> After being detained for several months, the government dismissed the murder charges against him and he was released.  <u>Id.</u>

Petitioner was arrested again in May 1994 on drug charges.  <u>Id.</u> at 827 – 28.  In August, 1997, after he had been convicted and was serving his sentence on those drug charges, he was

questioned again regarding the Johnson murder; he finally confessed and implicated his co-defendant. Id. at 828.  He was arrested and indicted for the Johnson murder while still serving the sentence on the drug charges. Id.

On August 7, 1998, Petitioner satisfied the 40-month sentence imposed by the District Court for the District of Columbia in Case No. 1:94cr325-2 for the drug charges referenced *supra*. See Declaration of D. Colston, Management Analyst, Bureau of Prisons ("BOP") Designation and Sentence Computation Center ("DSSC") ("Colston Decl."), ECF No. 11-2, ¶ 7 at 1; see also Sentence Monitoring Computation Data as of August 7, 1998, ECF No. 11-3 at 1 - 2. However, he remained in custody pending the murder charges.  See District of Columbia Department of Corrections ("DOC") Face Sheet No. 2, ECF No. 11-3 at 3.

Following pleas of not guilty on the Superior Court of District Columbia Case No. 1998-FEL-003373 charges of First Degree Murder While Armed, in violation of D.C. Code §§ 22-2404, 3202;[3] Possession of a Firearm During a Crime of Violence, in violation of D.C. Code § 22-3204(B);[4] and Carrying a Pistol Without a License, in violation of D.C. Code § 22-3204(A),[5] Petitioner was tried on the Johnson murder and related weapons offenses and found guilty. On September 10, 1999, he was sentenced in the Superior Court of the District of Columbia to 20 years to life for First Degree Murder While Armed; 5 years to 15 years for Possession of a Firearm During a Crime of Violence; and 20 months to 5 years for Carrying a Pistol Without a License, with some counts concurrent with and some consecutive to one another, resulting in a mandatory minimum term of 25 years.[6]   See   Superior Court of the District of Columbia

---

[3] These provisions have been updated and recodified in §§ 22-2101, 4502, respectively.

[4] This provision has been recodified in § 22-4504(b).

[5] This provision has been recodified in § 22-4504(a)(1).

[6] Petitioner's Judgment and Commitment/Probation Order specified that he receive a sentence of 20 years to life on the "Count C" murder conviction, with a mandatory sentence of 20 years. For the conviction on the "Count D"

Judgment and Commitment/Probation Order, ECF No. 11-3 at 4.   Because the date of Petitioner's offense was February 23, 1992 [ECF No. 11-3 at 5], Petitioner was sentenced pursuant to the provisions of the D.C. GTCA. See Heatley v. Driver, Civil Action No. 5:08cv125, 2009 WL 2413815 * 3 (N.D.  W.Va. July 31, 2009)(noting that the D.C. GTCA of 1986 applies to offenses committed on or after April 11, 1987, until June 21, 1994).  However, based on the manner in which the sentences were imposed, Petitioner has a life sentence, subject to parole, for a mandatory minimum term of 25 years.  See Superior Court of the District of Columbia Judgment and Commitment/Probation Order, ECF No. 11-3 at 4; see also Sentence Monitoring Computation Data as of April 13, 2018, ECF No. 11-3 at 5 - 6.

Under the National Capital Revitalization and Self-Government Act of 1997 ("Revitalization Act"), D.C. ST. § 24-101 et seq., after his sentencing in Superior Court of the District of Columbia, Petitioner was transferred to the custody of the BOP and was at FCI Gilmer when he filed his petition.

## IV. Standard of Review

### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356

---

possession of a firearm during a crime of violence, he received a sentence of 5 – 15 years, with a mandatory sentence of 5 years.  For his "Count E" conviction for carrying a pistol without a license, he received a sentence of 20 months to 5 years.

Count C was ordered to run consecutive to any other charges; Count D was ordered to run consecutive to Count C but concurrent with Count E.  Count E was ordered to run consecutive to Count C but concurrent to Count D.

Because he received a mandatory 20-year sentence on the Count C murder conviction and a mandatory sentence of 5 years on Count D, Petitioner has a total mandatory minimum sentence of 25 years.  See ECF No. 11-3 at 4.

(1990)). In considering a motion to dismiss for failure to state a claim a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure require "only 'a short and plain statement the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of fact in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45 - 46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than "labels and conclusions" or "formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 32 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft

v. Iqbal, 556 U.S. 662, 678 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

## B. **Motion for Summary Judgment**

The Supreme Court has recognized the appropriateness of summary judgment motions pursuant to Rule 56 of the Federal Rules of Civil Procedure in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 (1977); see also Maynard v. Dixon, 943 F. 407 (4th Cir. 1991). Summary judgment is appropriate "if the movant shows that there no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991).

Motions for summary judgment impose a difficult standard on the moving party because it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. FDIC, 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson, 477 U.S. at 248-49.

## V. **Analysis**

The Revitalization Act provides that the BOP is responsible for computing the sentences of D.C. offenders housed in BOP facilities. D.C. ST. § 24-101(b). Moreover, such persons are "subject to any law or regulation applicable to persons committed for violations of laws of the

8

United States consistent with the sentence imposed." Id. at § 24-101(a). Therefore, although the BOP is responsible for computing sentences of D.C. offenders housed in its facilities, the District of Columbia continues to control the computation of such sentences.

The District of Columbia Good Time Credits Act of 1986 was enacted on April 11, 1987. D.C. Code § 24-428 et seq. (1989 Repl). Prior to the D.C. GTCA, neither the District of Columbia nor the federal government allowed good time credits against minimum sentences; good time credit was allowed only against maximum sentences. Council of the District of Columbia, Report on the District of Columbia Food Time Credits Act of 1986) ("Report"). The GTCA changed the previous law by allowing good time credits to be applied against minimum sentences. D.C. Code § 24-428(b). As originally written, the Act applied only to inmates housed in District facilities and not to those District offenders assigned to federal facilities.[7] However, in 1991, the Act was amended to extend the application of institutional good time credits to all D.C. Code offenders incarcerated in any prison. See Franklin v. Ridley, 635 A.22d 356 (D.C. 1993). The time credited per month depended on the length of the sentence. Good time credits of five days per month applied to a sentence of "not less than 30 days and not more than 1 year," the shortest term covered. § 24-428(a)(1). Credits of ten days per month applied to a sentence of "10 years or more," the longest term covered. § 24-428(a)(5).

Nonetheless, pursuant to Program Statement 5880.33, District of Columbia Sentence Computation Manual ("PS 5880.33), "[a] minimum term imposed that is equal to the mandatory minimum term for that sentence will not receive good time credits." See PS 5880.33, Ch. 16,

---

[7] D.C. Code § 24-428(a) (1989) provided:

"Every person who is convicted of a violation of a District of Columbia ('District') criminal law in a court in the District of Columbia, imprisoned in a District Correctional facility, and who conduct is in conformity with all applicable institutional rules is entitled to institutional good time credits in accordance with the provisions of this section."

p. 5. Additionally, "[i]f the minimum term imposed is equal to the mandatory minimum which must be served for the offense, then no good time may be awarded and there is no need to establish an 85/15% date since the mandatory minimum date would be the parole eligibility date." See PS 5880.33, Ch. 16, p. 8.

Petitioner asserts that he received a sentence of 20 years to life for a murder charge; a 5 – 15 year sentence for possession of a firearm [during a crime] of violence; and an unspecified sentence for carrying a pistol without a license, "sentences running concurrent," resulting in a mandatory minimum sentence of twenty years. ECF No. 1-1 at 1 – 2.

Respondent contends that Petitioner was sentenced in the Superior Court of the District of Columbia to 20 years to life for First Degree Murder While Armed; 5 years to 15 years for Possession of a Firearm During a Crime of Violence; and 20 months to 5 years for Carrying a Pistol Without a License, with some counts concurrent with and some consecutive to one another, and that based on the way his partially consecutive and partially concurrent sentences were imposed, he has life sentence, subject to parole, for a total mandatory minimum term of twenty-five years. ECF No. 11-1 at 2. The record supports Respondent's version of the facts.

In reply, Petitioner appears to concede that he has a mandatory minimum sentence of twenty-five years. ECF No. 22 at 2. However, he argues that because "DC Code § 22-2404, under which he was sentenced in 1992 [sic], is not specifically excepted from the provision for institutional Good Time Credits under the Act," his parole eligibility date should be adjusted accordingly. Id. at 4. Relying on Cunningham, he insists that his sentence for a violation of D.C. Code § 22-2404 entitles him to be included in the D.C. GTCA. Id.

As a preliminary point, the undersigned notes that while the date of Petitioner's offense was February 23, 1992, he was not sentenced until September 10, 1999. On September 13, 1999, his parole eligibility date for his D.C. Superior Court sentences was originally calculated by the

10

D.C. Department of Corrections ("D.C. DOC") as being May 8, 2023. See District of Columbia Department of Corrections ("DOC") Face Sheet No. 2, ECF No. 11-3 at 3. Subsequently, after Petitioner was transferred to the custody of the BOP, the BOP calculated Petitioner's sentence as commencing on September 10, 1999, the day it was imposed.[8] See Sentence Monitoring Computation Data as of April 13, 2018, ECF No. 11-3 at 5 - 6. The record reveals that Petitioner was granted 587 days of prior custody credit for time spent in custody from April 3, 1992 to October 7, 1992 on the Johnson murder charges that were originally brought in 1992 and later dismissed (before being re-brought after Petitioner confessed in 1997) and for the time period of August 7, 1998 (the date Petitioner completed serving his 40-month sentence but was held pending the murder charges) to September 9, 1999, the day before he was sentenced and his current sentence commenced. See Sentence Monitoring Computation Data as of April 13, 2018, ECF No. 11-3 at 5 – 6, and Inmate Record, ECF No. 11-3 at 7 – 8.

However, his arguments to the contrary notwithstanding, the undersigned agrees with the Respondent that Petitioner does not earn statutory good time ("SGT") on his sentence, because 18 U.S.C. § 4161 (repealed) provides:

> Each prisoner convicted of an offense against the United States and confined in a penal or correction institution for **a definite term other than for life**, whose record of conduct shows that he has faithfully observed all the rules and has not been subjected to punishment, shall be entitled to a deduction from the term of his sentence beginning with the day on which the sentence commences to run . . .

18 U.S.C. § 4161 (emphasis added).

Records show that Petitioner has earned 132 days of Extra Good Time ("EGT"), which is comprised of both Industrial Good Time ("IGT") and Meritorious Good Time ("MGT"), pursuant to 18 U.S.C. § 4162. Specifically, Petitioner earned MGT for the time period of June

---

[8] Pursuant to the National Capital Revitalization and Self-Government Improvement Act of 1997, codified at D.C. Code Ann. § 24-101 et seq., responsibility for D.C. Code felony offenders, including the responsibility for computing the sentences of D.C. offenders housed in BOPO facilities, was transferred to the BOP.

26, 2002 to August 5, 2004, and IGT for the time period of August 6, 2004 to January 21, 2005. <u>See</u> Sentence Monitoring Good Time Data as of April 13, 2018. ECF No. 11-3 at 9.  Petitioner has also earned 75 days of EGT for DC Education Credit. <u>Id.</u> Overall, Petitioner has earned 207 days of EGT. <u>Id.</u>

With 587 days of prior custody credit and 207 days of EGT, at the time Petitioner filed his petition, his parole eligibility date was calculated to be November 17, 2022.  <u>See</u> Sentence Monitoring Computation Data as of January 31, 2018.  ECF No. 11-3 at 10. However, during an audit of Petitioner's sentence computation, conducted in response to this litigation, it was discovered that Petitioner's EGT had impermissibly reduced his sentence below his 25-year mandatory minimum term.  <u>See</u> Colston Decl., ¶ 19 at 2, ECF No. 11-2 at 2.  More specifically, Petitioner's Effective Full Term Date ("EFT"), based on his 25-year mandatory minimum term, is January 31, 2023. <u>See</u> Sentence Monitoring Independent Sentence Computation. ECF No. 11-3 at 11. Therefore, Petitioner's parole eligibility date was adjusted from November 17, 2022 to January 31, 2023, his EFT date.  <u>See</u> Sentence Monitoring Computation Data as of April 13, 2018, ECF No. 11-3 at 6.

Petitioner's reliance on <u>Cunningham</u> as entitling him to GTCs is unavailing; as noted by Respondent, <u>Cunningham</u> was reversed by <u>Poole v. Kelly</u>, 954 F.2d at 761, which held that "[i]n May 1987, one month after the effective date of the GTCA, the Director of the DOC issued a departmental order specifying that the Act does not apply to persons convicted of first-degree murder and sentenced under § 2404(b)." <u>Poole</u>, 954 F.2d at 762.

Accordingly, Petitioner's EFT based on his 25-year mandatory minimum term is January 31, 2023. <u>See</u> Sentence Monitoring Independent Sentence Computation, ECF No. 11-3 at 11. Therefore, his parole eligibility date can be no earlier than January 31, 2023, and any EGT he

earns will not affect his parole eligibility date.  See Coachman v. U.S. Parole, 816 F. Supp. 2d 20, 23 (D.D.C. 2011)("because petitioner was serving a mandatory minimum term of five years, good time credit could not have advanced his parole eligibility date").  Even if Petitioner's minimum term was not equal to his mandatory minimum, institution and educational good time credits still would not be applied to Petitioner's minimum term, because these types of credits cannot be applied to the minimum terms of persons sentenced under § 22-3202, § 22-2404(b), or § 22-3204(b). D.C. Code § 24-434[9] (repealed), and Petitioner was sentenced under all three of these precluding statutes. See Sentence Monitoring Computation Data as of April 13, 2018, ECF No. 11-3 at 5. See Gordon v. Warden, 1:07cv85, 2008 WL 2704518 *4, 2008 U.S. Dist. LEXIS 51219 *2 (N.D. W.Va. July 3, 2008) (inmate sentenced under D.C. Good Time Credits Act of 1986 was not entitled to good time credits against his minimum sentence imposed under § 22-4502 for murder while armed, based on restriction of D.C. Code § 24-221.06).

Therefore, because D.C. Code § 24-221.06 imposes the additional penalty of withholding GTCs from the minimum sentence of offenders who commit violent crimes while armed, Petitioner is not entitled to earn GTCs towards his mandatory minimum sentence of twenty-five years.  Because Petitioner was never entitled to earn GTCs toward his mandatory minimum term of imprisonment, he cannot have suffered any violation of his rights to Due Process or Equal Protection.

## VI. Recommendation

---

[9] This section is now codified as D.C. Code § 24-221.06 and holds that "[i]nstitutional and good time credits shall not be applied to the minimum terms of persons sentenced under § 22-4502, § 48-901.02, § 48-904.01, § 22-2803, or § 22-4504(b)."

Based on the foregoing, the undersigned recommends that the Respondent's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment [ECF No. 11] be **GRANTED**, and Petitioner's § 2241 petition be **DENIED and DISMISSED with prejudice**.

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made. Objections shall identify each portion of the magistrate judge's recommended disposition that is being challenged and shall specify the basis for each objection.  Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12. A copy of such objections should also be submitted to the United States District Judge. **Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation**. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and to transmit copies to all counsel of record electronically.

Further, upon entry of this Report and Recommendation, the Clerk is **DIRECTED** to terminate the Magistrate Judge association with this case.

DATED: December 17, 2018

/s/ *Michael John Aloi*_____
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE

14